REX D. GARNER, ESQ.
Nevada Bar No. 9401
AKERMAN LLP
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134
Telephone: (702) 634-5000
Facsimile: (702) 380-8572
Email: rex.garner@akerman.com

DANYA W. BLAIR
Texas Bar No. 00790315
(*Pro Hac Vice Application submitted*)
AKERMAN LLP
112 E. Pecan St., Suite 2750
San Antonio, TX 78205
Telephone: (210) 582-0220
Facsimile: (210) 582-0231

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| EDWARD D. JONES & CO. L.P., <br><br> Plaintiff, <br> vs. <br> MICHAEL PETERSON, <br><br> Defendant. | Case No.: 2:19-cv-01968-JCM-EJY <br><br> **DEFENDANT MICHAEL PETERSON'S MOTION TO DISSOLVE EX PARTE TEMPORARY RESTRAINING ORDER** <br><br> **EXPEDITED TREATMENT REQUESTED** |

Defendant Michael Peterson (**Mr. Peterson**) respectfully submits this Motion to Dissolve the Ex Parte Temporary Restraining Order (**Ex Parte TRO**) improperly obtained by Plaintiff Edward D. Jones & Company, L.P.'s (**Edward Jones**), on the basis of speculation now shown to be false, for the sole purpose of publicly damaging Mr. Peterson's reputation and business. Defendant respectfully requests expedited treatment of this Motion, including a hearing on 2 days' notice to Plaintiff as permitted by Fed. R. Civ. P. 65(b)(4).[1]

---

[1] In support of this Motion to Dissolve, Defendant incorporates its Memorandum in Opposition to TRO and the attached evidence filed November 12, 2019 [ECF No. 11].

1

## I. BASIS FOR MOTION

Based on nothing more than speculation from individuals with no personal knowledge, Edward Jones suggested to this Court that Mr. Peterson took a confidential document when he resigned on October 25, 2019 and used it to improperly solicit customers. Direct evidence now on file with the Court establishes he did not. Further, if Edward Jones had actually been concerned about a document they believed Mr. Peterson took, they could have contacted Mr. Peterson's attorney, whose contact information they received on October 25, and obtained a sworn Declaration attesting that Mr. Peterson did not take and does not have any confidential documents — **a Declaration this Court and Edward Jones now have**. Instead, Edward Jones chose to file public accusations against Mr. Peterson by inserting innuendo and speculation into affidavits and having them signed by an Indiana employee who never met Mr. Peterson, and a junior advisor assigned to call Mr. Peterson's clients. They also emailed at least one reporter with their accusations of misconduct against Mr. Peterson.

Edward Jones' tactics should not be condoned by this Court. None of the Edward Jones "evidence" was competent to support a TRO, as none of it was based on personal or direct knowledge. **Neither** of the two individuals who actually worked with Mr. Peterson in his Edward Jones office, **nor** the Regional Leader who directly supervised Mr. Peterson, submitted **any** testimony suggesting documents were missing from his office after he resigned. Further, **none** of the customers discussed in the hearsay affidavit submitted by the junior advisor were reported to have told Edward Jones that Mr. Peterson in any way "solicited" them to his new firm.

It is clear the purpose of these proceedings was **not** to secure the return of a confidential document taken by Mr. Peterson — as no such document exists. Rather the purpose was to sully Mr. Peterson's reputation, interfere with his ability to serve clients who have asked him to do so, and sound a warning to other Edward Jones advisors who may dare to seek employment elsewhere. Unfortunately that unscrupulous purpose is being achieved.

## II. EX PARTE TRO DOES NOT "PRESERVE" THE STATUS QUO

The Ex Parte TRO does not "preserve the status quo" as Edward Jones suggests. To the contrary, it drastically alters the status quo. Prior to the Ex Parte TRO, Mr. Peterson was a well-respected member of the financial services industry, without a single blemish on his sterling

2

reputation. Prior to the Ex Parte TRO, reporters were not publishing articles stating that Mr. Peterson did unethical things **he did not and would not ever do**, like "misappropriate" from Edward Jones "an internal report that identified all his clients, their account numbers and their asset details." Prior to the Ex Parte TRO, clients and potential clients in the community were not being told Mr. Peterson is unethical and unworthy of their trust. Prior to the Ex Parte TRO, both Edward Jones and Mr. Peterson were free to advise clients that it is *their choice* whether to work with Edward Jones or Mr. Peterson — a freedom of choice the Financial Industry Regulatory Authority (**FINRA**) requires. There was no need for a TRO to "protect the status quo" from Mr. Peterson, as he did nothing wrong. There *is* an urgent need to dissolve the TRO to protect Mr. Peterson, as the impression created by the TRO's existence — however wrong and misplaced — continues to do immeasurable and irreversible damage his reputation while it remains in place.

### III.  MR. PETERSON WAS DENIED THE OPPORTUNITY TO BE HEARD

Plaintiff was given the name and contact information for Mr. Peterson's attorney on October 25, 2019 but did not contact her to discuss any concerns regarding Mr. Peterson until it filed for an Ex Parte TRO on the evening of Friday, November 8, 2019. Plaintiff's counsel was advised at that time that Mr. Peterson did not take any documents or solicit any clients to move to his new firm, but they nonetheless proceeded to obtain Ex Parte TRO. The Motion was filed late Friday, November 8, 2019 then emailed to Mr. Peterson's counsel the next day, Saturday, November 9, 2019. Monday, November 11, 2019 was a federal holiday. **One (1) business day** after receiving notification of Plaintiff's concerns and a copy of its Motion for an Ex Parte TRO, Mr. Peterson filed comprehensive and conclusive evidence establishing that he did not take or use confidential information from Edward Jones, and did solicit any clients to move to his new firm. Just as this evidence was being filed, the Ex Parte TRO was entered. The TRO almost certainly would not have been entered if Mr. Peterson had the opportunity to be heard. He now seeks that opportunity.

### IV.  DISSOLUTION UNDER FRCP 65 IS PROPER

Dissolving a preliminary injunction or temporary restraining order is within the sound discretion of the district court. *Blom v. Floodsuckers, LLC*, 2012 WL 13071542, at *4 (D. Nev. Nov. 19, 2012), citing *Owen v. Perkins Oil Well Cementing Co.*, 2 F.2d 247, 247 (9th Cir. 1924). Fed. R.

Civ. P. 65(b)(4) requires courts to hear and decide a Motion to Dissolve an Ex Parte TRO "as promptly as justice requires."  Because the Court now has direct evidence that Edward Jones' speculation on which the TRO was based was unfounded, and because the existence of the baseless Ex Parte TRO acts to harm Mr. Peterson's reputation and livelihood continuously and perhaps irreversibly, justice requires the Motion to Dissolve be heard and ruled on without delay.

## V. ALTERNATIVE MOTION TO MODIFY TRO

In the alternative, based on the above, in the event the Court does not dissolve the Ex Parte TRO based on the evidence now before it, Mr. Peterson has established that he is likely to suffer great harm as a result of the TRO, and a substantial bond should be required.  Plaintiff is one of the country's largest broker dealers with vast resources, and Mr. Peterson is an individual whose livelihood and ability to support his family depends on the reputation he has worked hard to build.  For these reasons, Defendant asks that the TRO be modified to require a bond of no less than $50,000 from Plaintiff.

DATED November 13, 2019.

**AKERMAN LLP**

*/s/ Rex D. Garner*
REX D. GARNER, ESQ.
Nevada Bar No. 9401
1635 Village Center Circle, Suite 200
Las Vegas, NV 89134

DANYA W. BLAIR
(*Pro Hac Vice Application submitted*)
Texas Bar No. 00790315
**AKERMAN LLP**
112 E. Pecan St., Suite 2750
San Antonio, TX 78205

*Attorneys for Michael Peterson*

4